```
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

INTERNATIONAL UNION, UNITED
MINE WORKERS OF AMERICA, and
LOCAL UNION 1702, UNITED
MINE WORKERS OF AMERICA,
      Plaintiffs,

v.            //    CIVIL ACTION NO. 1:16CV56
                        (Judge Keeley)

MONONGALIA COUNTY COAL COMPANY,
      Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

Pending for consideration are cross motions for summary judgment filed by the plaintiff, International Union, United Mine Workers of America, and Local Union 1702, United Mine Workers of America (collectively "Union"), and the defendant, Monongalia County Coal Company ("Company"). For the reasons that follow, the Court **GRANTS** the Union's motion for summary judgment (dkt. no. 15) and **DENIES** the Company's motion for summary judgment (dkt. no. 17).

## I. FACTUAL BACKGROUND

The Company operates the Monongalia County Mine (the "Mine"), an underground coal mine located in Monongalia County, West Virginia. The Union represents the Company's bargaining unit (union) employees for purposes of collective bargaining. The Company and the Union are bound by a collective bargaining agreement, titled the National Bituminous Coal Wage Agreement of 2011 ("CBA"), that governs the wages, hours, and working conditions of union employees at the Mine. (Dkt. No. 16 at 2).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

Sometime in 2014, the Company began operating a continuous mining schedule, meaning that employees mined coal twenty-four hours a day, seven days per week. (Dkt. No. 1-1 at 5). The Company established three crews to work a traditional Monday to Saturday schedule, with the crews rotating off every third Saturday. A fourth crew schedule was established so that production could continue on Sundays. Id. That fourth schedule had employees working from Wednesday to Sunday, with Monday and Tuesday off from work. Id.

The continuous schedule presented certain difficulties, among which was the replacement of the heavy duty steel cables used to hoist mined coal to the surface, also known as "skip ropes." Id. at 6. Because they are required to lift large, extremely heavy buckets of coal to the surface, skip ropes require regular inspection and replacement. Id. As part of the inspection process, skip ropes are x-rayed periodically to determine when they are nearing the end of their life cycle. Id.  According to the parties, skip ropes are changed on roughly an annual basis, or more frequently depending on their condition. Id. Because changing the skip ropes can only be accomplished when there is no production in progress, the Company scheduled the replacement for times when production was going to be

UMWA v. MONONGALIA CTY. COAL CO.                                1:16CV56

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

halted for other reasons and the skip hoist would therefore not be required to raise coal to the surface. Id.

Two skip rope changes are at the center of this matter. The first occurred during the twelve-hour time period beginning with the second shift on October 21, 2014, and running into the midnight shift on October 22, 2014. The second occurred during the twelve-hour time period beginning with the second shift on November 8, 2014, and running into the midnight shift on November 9, 2014. For each skip rope replacement, Preparation Plant Supervisor, Roland Smith ("Smith"), scheduled them only a few days in advance after being told by the Mine Superintendent that production would be halted during those time periods. Id. Although a few union employees performed portions of the work, it is undisputed that the Company also utilized an outside contractor, NexGen Industrial Services Inc. ("NexGen"), to perform approximately 85.5 hours of labor related to the skip rope changes. Id.

The Union filed two grievances, arguing that the skip rope changes are jurisdictional work that can only be performed by union employees under Article IA(a) of the CBA, which provides:

Work Jurisdiction -

The production of coal, including removal of overburden and coal waste, preparation, processing and cleaning of coal and transportation of coal (except by "waterway or

UMWA v. MONONGALIA CTY. COAL CO.                              1:16CV56

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

> rail not owned by Employer), repair and maintenance work normally performed at the mine site or at a central shop of the Employer and maintenance of gob piles and mine roads, and work of the type customarily refuted to all of the above shall be performed by classified Employees of the Employer covered by and in accordance with the terms of this Agreement. Contracting, subcontracting, leasing and subleasing, and construction work, as defined herein, will be conducted in accordance with the provisions of this Article.

Alternatively, the Union contended that, even if the work did not fall under Article IA(a), it would still be "repair and maintenance work" under Article IA(g)(2), which provides in pertinent part:

> Repair and Maintenance Work -
>
> Repair and maintenance work of the type customarily performed by classified Employees at the mine or central shop Shall not be contracted out except . . . where the Employer does not have available equipment or regular Employees (including laid-off Employees at the mine or central shop) with necessary skills available to perform the work at the mine or central shop.

According to the Union, even if it was repair and maintenance work, the slip rope replacement was work that union employees always performed, and were readily available to perform in this instance; thus, the CBA barred the Company from contracting it out to NexGen.

Conversely, the Company argued that the work was clearly repair and maintenance work, not jurisdictional work under Article IA(a), and, as such, it could contract the work to NexGen because union employees were not reasonably available during the relevant

UMWA v. MONONGALIA CTY. COAL CO.                             1:16CV56

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

times. Id. It maintained that all union employees were offered the opportunity to work on the dates in question. Although a few accepted and worked on the skip rope replacement, others were already working on other assigned duties in the mine and therefore were unavailable; the remainder simply declined to accept the invitation to work. Id. at 16.

On June 12, 2015, Arbitrator Michael L. Allen ("Arbitrator"), consolidated the two grievances and conducted a hearing with the parties, during which they presented exhibits and witnesses for examination and cross examination. (Dkt. No. 1-1). On July 10, 2015, the Arbitrator entered his Arbitration Award ("Award"), ultimately finding that the Company violated the CBA when it contracted out the subject work to NexGen. Id. at 21-22. The Award concluded that the Company had failed to make a good faith effort to notify the union employees of the availability of the skip rope replacement work, and that the "evidence [was] inadequate that all the Company's entire force of 'regular Employees' on those dates was not 'reasonably available' for the work." Id. at 23-24. The Arbitrator sustained the grievances and awarded the Union "85.5 hours' pay at straight-time Grade 1 Plant wage rate." Id. at 24. Further the Award ordered that the Company "shall cease and desist the use of outside contractors to change skip ropes in the future,

**UMWA v. MONONGALIA CTY. COAL CO.                              1:16CV56**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

unless such Article IA(g)(2) work is first fairly offered to all 'regular Employees,' and unless it then appears that sufficient employees for its performance are 'reasonably unavailable.'" Id.

## II. PROCEDURAL BACKGROUND

On March 31, 2016, the Union filed suit in this Court, claiming that the Company has failed to comply with the cease-and-desist order in the Award. (Dkt. No. 1). Specifically, the complaint alleges that the Company has continued, as recently as February 26, 2016, to use contractors to perform skip rope replacement work without first providing adequate notice to the union employees of the work availability, despite there being seventy miners idled during that time period and an additional 200 laid-off miners. (Dkt. No. 1 at 5).

The Union asks the Court: 1) to declare that the Award is final, binding, and enforceable; 2) to specifically enforce the Award, including the make whole portion of the Award and the cease-and-desist order; 3) to permanently enjoin the Company from using contractors in contravention of the CBA; 4) to award it damages for continued lost work opportunities of its members, including lost benefits, lost dues, and pre- and post-judgment interest of the monetary award; and 5) to award attorney's fees and costs and any other just and proper relief. (Dkt. No. 1 at 7).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

In their Rule 26(f) report (dkt. no. 9), the parties stipulated that there were no material facts in dispute and that this matter should be resolved on cross motions for summary judgment. Those motions are fully briefed and the matter is ripe for review.

### III. LEGAL STANDARD

**A. Summary Judgment**

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist sufficient to prevent judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

**B.   Judicial Review of Arbitration Awards**

Judicial review of arbitration awards is "among the narrowest known to the law." PPG Indus. Inc. v. Int'l Chemical Workers Union Council of United Food and Comm'l Workers, 587 F.3d 648, 652 (4th Cir. 2009) (internal citations omitted). Arbitration awards are presumptively valid. Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996). This is because the parties to a CBA "bargained for the arbitrator's interpretation and resolution of their dispute." Id. Consequently, courts generally defer to the arbitrator's reasoning and should not overturn their factual findings unless there has been fraud by the

**UMWA v. MONONGALIA CTY. COAL CO.** 1:16CV56

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

parties or dishonesty by the arbitrator. Id. Indeed, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." PPG Indus., 587 F.3d at 652 (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)).

Nevertheless, courts should overturn arbitration awards when the "award violates well-settled and prevailing public policy, fails to draw its essence from the collective bargaining agreement or reflects the arbitrator's own notions of right and wrong." Mountaineer, 76 F.3d at 608 (citing Misco, 484 U.S. at 38). Thus, an "arbitrator cannot 'ignore the plain language of the contract' to impose his 'own notions of industrial justice.'" PPG Indus., 587 F.3d at 652 (quoting Misco, 484 U.S. at 38).

Moreover, when construing the contract, "the arbitrator must take into account any existing common law of the particular plant or industry, for it is an integral part of the contract." Clinchfield Coal Co. v. District 28, United Mine Workers of America & Local Union No. 1452, 720 F.2d 1365, 1368 (4th Cir. 1983) (quoting Norfolk Shipbuilding and Drydock Corp. v. Local No. 684 of the Int'l Brotherhood of Boilermakers, 671 F.2d 797, 800 (4th Cir. 1982)). Finally, "[t]he 'basic objective' of a reviewing court in

UMWA v. MONONGALIA CTY. COAL CO.                          1:16CV56

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

the arbitration context is 'to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms, and according to the intentions of the parties.'" PPG Indus., 587 F.3d at 654 (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947 (1995)).

## IV. DISCUSSION

The Union contends that the Court should enforce the Arbitrator's Award because it draws its essence from the contract and comports with the common law of the shop. (Dkt. No. 16 at 5). Further, it argues that this is exactly the type of arbitral decision the parties bargained for in the CBA and agreed would be final and binding. Id. The Union also argues that any belatedly asserted defenses to the Award are time-barred as a matter of law. Id. Finally, the Union maintains that enforcement of the Award, particularly the cease-and-desist order, is vital to avoid rendering the arbitration process futile. Id.

For its part, the Company argues that the Award should be vacated because it ignores arbitral precedent and the common law of the shop, and presumably applies the Arbitrator's own notions of equity and fairness. (Dkt. No. 17-1 at 2). The Company thus maintains that the Award does not draw its essence from the contract. Id. Finally, the Company insists that the Arbitrator

**UMWA v. MONONGALIA CTY. COAL CO.**                     1:16CV56

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

failed to take into account applicable industry safety standards and regulations, specifically the training regulations of the Mine Safety and Health Administration codified in 30 C.F.R. § 48.25-27. This failure, according to the Company, presents a safety concern and violates public policy. Id.

There are three issues presented here for the Court's review. The first is whether the defenses raised in the Company's answer to the complaint are time barred under the United States Arbitration Act ("Arbitration Act"), 9 U.S.C. § 12. The next issue is whether the Award drew its essence from the contract and comported with the common law of the shop. The third and final question is whether the Award should be vacated because it violates public policy. For the reasons that follow, the Court concludes that the Company's defense is not time-barred, the Award draws its essence from the contract and comports with the common law of the shop, and, finally, the Award does not violate public policy.

**A.    The Company's Defense is not Time Barred**

The Union argues that the Company's defenses to the Award are time barred under 9 U.S.C. § 12, which provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." This argument, however, is

11

**UMWA v. MONONGALIA CTY. COAL CO.** 1:16CV56

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

inapplicable here because the Company does not challenge the validity of the Award, but rather its enforceability. Indeed, contrary to the Union's position, the two cases on which it relies recognize this distinction, separately analyzing validity and enforceability. See Sheet Metal Workers Int'l Assoc. v. Power City Plumbing & Heating, Inc., 934 F. 2d 557 (4th Cir. 1991); Int'l Union of Bricklayers and Allied Craftsmen, Local Union No. 15 v. Rich Farms, Inc., 2005 WL 2175132 (N.D.W.Va. Sept. 7, 2005) ("Having determined that the Court is precluded from reviewing the validity of the Committee's decision, this Court must now determine the enforceability of the Committee's decision.").

Attacks on the validity of an Award stem from impropriety in the arbitral process. The Arbitration Act itself explicitly provides the bases for vacating an award, which include, among other things, fraud, corruption, misconduct, material mistake, or an arbitrator exceeding his authority. See 9 U.S.C. §§ 10-11; see also Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 707-08 (2nd Cir. 1985) (holding that "only clear evidence of impropriety in the arbitration proceedings would justify denial of the award" (citing Sommer v. National Bulk Carriers, Inc., 597 F.2d 819, 825 (2d Cir. 1979))).

12

UMWA v. MONONGALIA CTY. COAL CO.                              1:16CV56

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

The Company does not attack the validity of the Award, but instead contends that it is unenforceable because it fails to draw its essence from the contract, runs counter to the common law of the shop, and conflicts with public policy. There is no allegation that the arbitration was infected with fraud, corruption, or any other form of procedural defect, nor does the Company argue that the Arbitrator exceeded his authority by arbitrating the issues grieved. See e.g., Power City Plumbing, 934 F.2d at 561 (analyzing attack under 9 U.S.C. §§ 10-12 and holding that award was valid despite defendant's absence from arbitration because it had received proper notice). Because the Company's defense of unenforceability is not an attack on the validity of the Award, the Court concludes that it is not time barred under the three month limitation of 9 U.S.C. § 12.

**B.    The Award Draws its Essence from the CBA and Comports with the Common Law of the Shop**

The Company argues that the Arbitrator ignored the plain meaning of Article IA(g)(2) of the CBA, which states that repair or maintenance work "Shall not be contracted out except . . . where the Employer does not have . . . regular Employees (including laid-off Employees at the mine or central shop) with necessary skills <u>available to perform the work</u> . . . ." (emphasis added). In

**UMWA v. MONONGALIA CTY. COAL CO.**                          1:16CV56

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

support, the Company presented the Arbitrator with what it deems is a "long history" of arbitral precedent establishing that it "had properly inquired as to the availability of the bargaining unit employees and determined that they were unavailable." (Dkt. No. 17-1 at 13); (Arb. Award, Dkt. No. 1-1 at 15-16 (discussing Company's cited arbitral precedent)).

The Union maintains that the Arbitrator acted within his authority to interpret the meaning of Article IA(g)(2), and the Award therefore draws its essence from the contract. (Dkt. No. 18 at 3). Moreover, according to the Union, the law of the shop establishes that the Company's efforts to notify union employees of the availability of the work were wholly insufficient, and it therefore cannot be said that there were not enough employees available to perform the work. Id.; see also Arb. Award, Dkt. No. 1-1 at 14 (discussing Union's arbitral precedent).

Here, based on a plethora of arbitral decisions addressing the matter, it is evident that the phrase, "available to perform the work," is vague. Consequently, the Arbitrator not only is allowed to interpret its meaning, he is obligated to do so. Mountaineer Gas, 76 F.3d at 608 (noting that the parties to a CBA "bargained for the arbitrator's interpretation and resolution of their dispute"); see also PPG Indus., 587 F.3d at 654 (noting that courts

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

should not second-guess an arbitrator's finding of ambiguity). Indeed, "construing or applying the contract" is generally within the exclusive purview of the Arbitrator. PPG Indus., 587 F.3d at 652.

After determining that the contract provision was ambiguous, the Arbitrator did not ignore the "existing common law of the particular plant or industry." Clinchfield Coal, 720 F.2d at 1368. Rather, he thoroughly reviewed the prevailing common law of the shop to arrive at his decision. He first concluded that the arbitral precedent cited by the Company "hold[s] that the classified employees may be considered to be unavailable, and contracting may justifiably occur, if, at the time when the needed repair and maintenance work is to be done, they have declined all known overtime opportunities." (Dkt. No. 1-1 at 19).

The Arbitrator then reviewed the arbitral precedent submitted by the Union, which concluded that "the employer cannot properly determine whether its employees are or are not 'reasonably available' for the overtime or premium work opportunity, '[u]ntil that offer was made and the employees declined it.'" Id. (quoting Arbitration Review Board Decision No. 78-45). Further, the Arbitrator recognized several decisions holding that the employer must make a "good faith" and "serious" effort to notify union employees of the work opportunity. Id. Finally, other precedent

15

UMWA v. MONONGALIA CTY. COAL CO.                                        1:16CV56

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

established that "the lack of volunteer sign-ups does not provide sufficient justification . . . where the employer failed to use 'reasonable alternative ways to contact bargaining unit members and offer them the repair and maintenance work,' such that [they] were unaware of the extant opportunity." Id. (citations omitted).

Guided by these overarching principles, the Arbitrator painstakingly reviewed the facts of the case, the evidence presented by the parties, and the testimony of the witnesses. He considered the limited scope of the notice provided by the company, together with testimony that underground workers "commonly seek and will very readily accept surface assignments when the same are made known and offered to them." Id. at 21. Notably, he found that the Company had failed to bear the burden of establishing the applicability of Article IA(g)(2). More specifically, it had failed to establish "that its underground personnel from the Mine were informed by it of the repair and maintenance opportunities relative to the skip rope changing work . . . , much less that said opportunities were knowingly spurned by said personnel, nor that the personnel from the Mine were not 'reasonably available' to be called out to the surface." Id.

In reaching his conclusion, the Arbitrator analyzed the competing precedent defining the relevant common law of the shop, made factual findings regarding the grieved actions, and concluded

UMWA v. MONONGALIA CTY. COAL CO. 1:16CV56

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

that the Company had violated the CBA because there was inadequate evidence that the entire force of "regular Employees" was not "reasonably available" to perform the work. (Dkt. No. 1-1 at 21-22).

Ultimately, the Company asks the Court to review and reject the Arbitrator's factual findings. This the Court will not do. The Supreme Court of the United States has specifically admonished any court from such judicial interference in arbitrators' factual findings, and the facts of this case hardly give rise to an occasion to circumvent that edict. See Mountaineer Gas, 76 F.3d at 608 ("[A]bsent any fraud by the parties or dishonesty by the arbitrator, an arbitrator's findings should never be overturned." (citing Misco, 484 U.S. at 38)). Accordingly, the Court concludes that the well reasoned and factually supported Award not only drew its essence from the contract, but also conformed with the prevailing common law of the shop.

### C. The Award does not Violate Public Policy

The Company finally contends that the Award fails to consider the "legal requirements which must be met for employees to perform work at a coal mine." (Dkt. No. 17-1 at 17). In support of its contention, the Company cites 30 C.F.R. §§ 48.25-27, which

17

UMWA v. MONONGALIA CTY. COAL CO. 1:16CV56

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

generally outline certain training requirements for miners. This argument lacks merit.[1]

To begin, there is no indication that the regulations cited by the Company had any bearing on whether there would have been union workers available to perform the skip rope changes had they been adequately notified. The first regulation, 30 C.F.R. § 48.25, covers training that all miners receive prior to starting work at a mine. Presumably, the Company does not argue that it failed to fulfill this regulation with every miner it employed — before they began working at the mine.

The next regulation, 30 C.F.R. § 48.26, applies to "experienced miners" who are: "(1) Newly employed by the operator; (2) Transferred to the mine; (3) Experienced surface miners transferred from underground to surface; or (4) Returning to the mine after an absence of more than 12 months." Again, the Company is presumably not arguing that any such experienced miners working at the mine during the relevant time periods were not then trained because "[e]xperienced miners must complete the training prescribed

---

[1]Tellingly, although it complains that the Award did not discuss this issue, the Company never bothered to raise it with the Arbitrator in its opening statement (dkt. no. 17-1 at 26-32), during the proceedings, or during its closing statement (dkt. no. 17-1 at 127-44).

UMWA v. MONONGALIA CTY. COAL CO.                               1:16CV56

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

in this section <u>before beginning work duties</u>." 30 C.F.R. § 48.26 (emphasis added).

Finally, 30 C.F.R. § 48.27 appears to apply only to "[m]iners assigned to new work tasks as mobile equipment operators, drilling machine operators, haulage and conveyor systems operators, ground control machine operators, AMS operators, and those in blasting operations," none of which was the type of work at issue here.

Further undermining the Company's argument was the testimony by multiple mine personnel that the skip ropes changes were often performed by workers without any specialized training. <u>See, e.g.</u>, Dkt. No. 1-1 at 7 (testimony of Herb Frye that "comparatively inexperienced personnel from the underground portion of the mine helped" perform skip rope changes); Dkt. No. 1-1 at 8 (testimony of Jim Ponceroff that "[e]mployees inexperienced in said work, including some from the underground areas, . . . have previously been assigned to help in the project").

Although it is true that courts should refuse to enforce arbitration awards that interpret contract language in such a way that "would violate 'some explicit public policy,'" this is not such a case. <u>Misco, Inc.</u>, 484 U.S. at 43. As noted, there is no evidence that the regulations cited by the Company apply to the work at issue here. Further, the testimony established that there

**UMWA v. MONONGALIA CTY. COAL CO.**                    1:16CV56

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17]**

were no special skills required to perform the skip rope changes, and the Company often utilized inexperienced and unskilled workers to perform such work. Accordingly, the Award of the Arbitrator did not violate any public policy.

## V. CONCLUSION

For the reasons discussed, the Court **GRANTS** the Union's motion for summary judgment (dkt. no. 15), **DENIES** the Company's motion for summary judgment (dkt. no. 17), and **ORDERS** that the Arbitration Award be **ENFORCED**, including its **CEASE AND DESIST** order.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to enter a separate judgment order.

DATED: March 6, 2017

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE